CRAWLEY, Presiding Judge.
The Housing Authority of the Birmingham District (“the landlord”) appeals from an order setting aside a jury verdict in its favor and entering a judgment as a matter of law in favor of Sherry Pritchett (“the tenant”) in an unlawful-detainer action. We reverse.
On October 12, 1999, the landlord and the tenant entered into an agreement whereby the tenant leased an apartment in the Morton Simpson Village public-housing project operated by the landlord. On December 10, 2001, the tenant was “recerti-fied” as the occupant of the apartment under the lease. On May 1, 2002, the tenant was arrested by officers of the Birmingham Police Department and charged with the misdemeanor offense of interfering with a governmental operation. The tenant pleaded guilty to the charge. On September 5, 2002, the landlord notified the tenant that it was terminating her lease based on her violation of the criminal-activity provisions of the lease, which provided, in pertinent part:
“RESIDENT AGREES:
[[Image here]]
“(K) To assure that the resident, another person under the resident’s control, any member of the resident’s household, or a guest, shall not engage in:
“(1) Any criminal activity on or off the landlord’s premises that the landlord determines may interfere with or threaten the health, safety, or right to peaceful enjoyment of the premises by other residents, employees of the landlord or any other person lawfully on the landlord’s premises.
[[Image here]]
[[Image here]]
“(Q) To refrain from any illegal or other activity that may be detrimental to or impair the physical or social environment and/or the health and safety of the residents of the development (including illegal possession or use of controlled substances);
[[Image here]]
“(V) Tó' abide by all necessary regulations and policies made by the landlord for the benefit and well-being of the landlord and residents. Policies -and regulations are posted in the landlord’s offices and are incorporated herein by reference.”
On October 8, 2002, when the tenant had failed to vacate the premises, the landlord filed an unlawful-detainer aption in Jefferson District Court. After a trial, the district court entered a judgment in favor of the landlord; the tenant timely appealed to the Jefferson Circuit Court and demanded a jury trial.
*828 On January 27, 2004, the case was tried to a jury in circuit court. The landlord presented evidence establishing that on May 1, 2002, Birmingham police officers present at the housing project to execute a search warrant in a “drug bust” arrested the tenant and charged her with the misdemeanor offense of interfering with a governmental operation. Detective James Jordan, a narcotics officer with the Birmingham Police Department, testified that on May 1, 2002, he and 11 other officers clad in riot gear arrived on the premises of the Morton Simpson Village housing project. Det. Jordan stated that the officers approached an apartment occupied by suspected drug dealers from a direction that the suspected drug-dealer occupants could not see them. As the officers were making their approach, Det. Jordan saw the tenant “wav[ing] her hand wildly” toward the drug dealers, yelling, and pointing at the officers. Jordan stated that he could not hear what the tenant was saying, but he thought the tenant was trying to alert the drug dealers to the presence of the officers. He stated that he assumed that the tenant was trying to warn the drug dealers of the officers’ approach because, he testified, “the drug dealer came around the corner and looked at [the tenant] and looked at us, and [then] turned around and ran.” Det. Jordan said that he saw no children in the area. He drew a diagram indicating the location of the apartment for which he had a search warrant, the direction from which the officers were approaching, and the position of the tenant. The diagram was not submitted in evidence and is not in the record on appeal. After the landlord presented its case, the tenant moved for a judgment as a matter of law (“JML”),[1] which the circuit court denied.
The tenant testified that on the day in question three people visited her — her four-year-old granddaughter, a friend, and the friend’s seven-year-old niece. The tenant stated that her friend took the two young girls outside to play, after which the tenant heard a noise, looked outside, and saw about 10 police officers alight from a van and run across the parking lot. The tenant testified that, in an attempt to protect her granddaughter, she went outside, motioned to her friend, and “hollered” at her to get the children back inside. The tenant also drew a diagram indicating the positions of the police officers, her friend, the two children, and herself. That diagram is also not in the record on appeal.
The tenant testified that she pleaded guilty to the offense of interfering with a governmental operation because a friend who posted her bail advised her that it would be in her best interest to do so. She testified that she told the apartment manager that she had pleaded guilty because she could not afford to pay a lawyer to represent her. She stated that she would not have pleaded guilty if she had known that she would be evicted from her apartment.
The tenant renewed her motion for a JML at the close of all the evidence; the court denied the motion. The jury returned a verdict in favor of the landlord. On February 25, 2004, the tenant filed a postverdict motion for a JML pursuant to Rule 50(b), Ala. R. Civ. P., alleging, among other things, that the evidence was insufficient to support the verdict, and, in the alternative, a motion for a new trial pursuant to Rule 59, Ala. R. Civ. P., alleging that the verdict was against the weight and preponderance of the evidence. On March 25, 2004, the circuit court granted *829 the tenant’s motion for a JML. The court determined:
“[The tenant] lives in a housing project managed by [the landlord] at 4507B Eighth Terrace North in Birmingham. Her current lease was updated on [December] 10, 2001. [The landlord] furnished [the tenant] with a Lease Termination Notice and Demand for Possession effective September 10, 2002. The basis for the termination was the allegation that she had violated Section IV(K-l), (Q) and (V) of her lease. Specifically, the notice stated:
“ ‘On or about May 1, 2002, while [the] Birmingham Police Department was executing a search warrant in the housing development, you were arrested for interfering with a Government Operation. [The landlord] considers this to be a violation of the criminal activity provision of your lease. Therefore, your lease is being terminated on these bases.’
“The court has heard the evidence and during the trial it became clear to the court that a misunderstanding caused the police to arrest [the tenant]. When [the tenant] saw the heavily armed SWAT team from the Birmingham Police Department coming into her housing project, she became concerned because her young grandchild was playing outside in the direction the team was going. She waved her arms to signal in order to get them out of the path of danger. Her actions were misinterpreted by the policemen as sending a signal to the drug dealers who were the subject of the raid. Therefore, she was charged with interfering with a government operation. With the lack of counsel, she took the easy path and entered a guilty plea to the charge.
“Under the clear facts of this ease, the court finds that the verdict in this case was against the great weight and preponderance of the evidence. There was no substantial evidence presented [at] the trial to support the verdict. [The tenant] was not guilty of violating the terms of her lease.
“It is, therefore, Ordered and Adjudged that the judgment of January 28, 2004 is set aside. Judgment as a matter of law is entered in favor of the defendant, [the tenant], and against the plaintiff [the landlord]. Costs are taxed as paid.”
The issue presented on this appeal requires us to distinguish evidentiary sufficiency from evidentiary weight.
“Evidentiary challenges, except on grounds of admissibility, are divided into two separate and distinct categories: sufficiency of the evidence raised by motions for J.N.O.V. [now JML] and measured by the ‘scintilla’ [now substantial] evidence rule; and weight and preponderance of the evidence raised by a motion for new trial and measured by the ‘palpably wrong and manifestly unjust’ standard.”
Nelson Bros., Inc. v. Busby, 513 So.2d 1015, 1018 (Ala.1987).
“ ‘The standard of review applicable to a motion for directed verdict or judgment notwithstanding the verdict [now, preverdict and postverdict motions for a JML] is identical to the standard used by the trial court in granting or denying the motions initially. Thus, when reviewing the trial court’s ruling on either motion, we determine whether there was sufficient evidence to produce a conflict warranting jury consideration. And, like the trial court, we must view any evidence most favorably to the non-mov-ant.’ ”
Glenlakes Realty Co. v. Norwood, 721 So.2d 174, 177 (Ala.1998) (quoting Bussey *830 v. John Deere Co., 531 So.2d 860, 863 (Ala.1988)).
“In a jury case, a motion for judgment as a matter of law challenges the sufficiency of the evidence supporting the verdict. To review the sufficiency, we consider the entire trial record in the light most favorable to the nonmovant, drawing reasonable inferences in its favor. ‘An issue is properly submitted to the jury where there is a conflict in substantial evidence — “evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions.” ’ ”
Fluorine On Call, Ltd. v. Fluorogas Ltd., 380 F.3d 849, 855 (5th Cir.2004) (citations omitted).
In this case, the tenant moved for a postverdict JML, attacking the sufficiency of the evidence, or, in the alternative, for a new trial, attacking the weight of the evidence. The circuit court entered a JML in favor of the tenant, thereby determining that the landlord’s evidence was insufficient to support the judgment. See Rule 50, Ala. R. Civ. P., Committee Comments. The issue whether the circuit court might properly have found the verdict to have been against the great weight of the evidence, thereby warranting a new trial, see Jawad v. Granade, 497 So.2d 471 (Ala.1986), is, therefore, not before us. The question that is before us is whether the circuit court erred in determining that the landlord failed to present evidence that was sufficient to authorize submission of the case to the jury. We answer that question in the affirmative.
In order to affirm the judgment of the circuit court, this court would have to conclude that, viewing the evidence in the light most favorable to the landlord, no reasonable person could infer — from the tenant’s conduct on the date in question and from her subsequent guilty plea — that the tenant was attempting to warn drug dealers of the presence of the police officers. We would have to hold that there was no substantial evidence on that material issue. This we cannot do.
The landlord presented evidence that, if believed by a jury, was sufficient to support a verdict for the landlord. The judgment of the Jefferson Circuit Court is reversed, and the cause is remanded with instructions to reinstate the verdict in favor of the landlord.
REVERSED AND REMANDED.
PITTMAN, MURDOCK, and BRYAN, JJ., concur.
THOMPSON, J., dissents, with writing.

. The tenant styled her motion as a motion for a directed verdict. That motion is now called a motion for a judgment as a matter of law, pursuant to Rule 50(a), Ala. R. Civ. P.