475 So.2d 521 (1985)
Tammy WALLACE, an incompetent suing by her guardian, next friend and mother, Rhonda E. INMAN
v.
David CAMPBELL and the City of Andalusia.
83-680.
Supreme Court of Alabama.
August 23, 1985.
Frank J. Tipler, Jr. of Tipler & Tipler, Andalusia, for appellant.
Abner Powell III of Powell, Powell, Pearson & McKathan, Andalusia, for appellee.
FAULKNER, Justice.
This is an appeal from a judgment entered on a jury verdict in favor of the defendants, David Campbell and the City of Andalusia, in a personal injury action brought on behalf of Tammy Wallace. Plaintiff's appeal is bottomed on the proposition that the trial court erred in refusing to grant her motion for a new trial because a juror did not disclose on voir dire that she was a relative of the Covington County Sheriff. We agree and reverse with instructions to grant the motion for a new trial.
Tammy Wallace was a passenger in an automobile driven by one Ricky Bush on the night of July 10, 1982. On that evening *522 David Campbell, a police officer for the City of Andalusia, observed Bush's automobile veer over the center line of the roadway on which it was traveling. Campbell turned on his siren and flashing lights and began pursuing Bush's automobile. Bush sped up and there ensued a high-speed chase, which ended in a crash at a police road-block in Red Level, Alabama. Tammy was severely injured. She has not regained consciousness since the accident.
During voir dire the prospective jurors were asked the following question:
"Have any of you or any member of your family, that is, a reasonably close relative, ever been employed, or otherwise connected with any of the following: The police of any town, fireman of any town, sheriff of any county, or state trooper."
One of the jurors, Cynthia Gail Richburg, whose maiden name was Cynthia Harrell, failed to respond to the above-stated question despite the fact that she is related to Don Harrell, the sheriff of Covington County.
The proper inquiry on a motion for new trial based on improper or non-existent responses to voir dire questions is whether the response, or lack of response, resulted in "probable prejudice" to the movant. Cavalier Insurance Corp. v. Faulk, 368 So.2d 6, 8 (Ala.1979); Freeman v. Hall, 286 Ala. 161, 238 So.2d 330, 335 (1970). In Cavalier Insurance Corp., two jurors failed to disclose on voir dire that they had been represented by one of the law firms involved in the trial in which they served as jurors. During voir dire the venire was asked if any of its members had "ever been represented in any matter by any of the three named members of the law firm in question." The two jurors, a husband and wife, failed to inform counsel that one of the lawyers in question had once filed a suit on their behalf. In that case we ruled that the trial court had abused its discretion in failing to grant the motion for a new trial.
Not knowing that a potential juror is a relative of the county sheriff would probably result in prejudice to the plaintiff in an action against a local policeman when the sole issue litigated was the propriety of a high-speed automobile chase by a police officer seeking to make an arrest. It is highly unlikely that the plaintiff's lawyer would have chosen not to strike Mrs. Richburg had he known of her kinship to Sheriff Harrell. We are aware that not every failure of a venireman to respond correctly to a voir dire question will entitle the losing party to a new trial. See, e.g. Martin v. Mansell, 357 So.2d 964 (Ala.1978); Freeman v. Hall, 286 Ala. 161, 238 So.2d 330 (1970). However, when the prejudice to the movant is probable, we must in fairness reverse the case and remand it for a new trial. Cavalier Insurance Corp..
The plaintiff also complained that on the morning of the closing arguments a great number of armed, uniformed police officers chose to "exercise their special right as officers of the Court" to "fill the seats" inside the rail opposite the jury. On the motion for new trial, several officers who had been present during the trial made various estimates as to how many policeman were in attendance. One of the officers testified that he and other officers had gone into the jury's recess room during a recess, though he denied discussing the case while in the jury's presence.
The plaintiff argues that, given the nature of the case, arising as it did out of a policeman's execution of his duties, in which police officer and the City of Andalusia were defendants, the presence of unusual numbers of uniformed police at bar during the trial tended to intimidate the jury and to prejudice her case. Since the case must be reversed on other grounds, it is unnecessary for us to consider the plaintiff's arguments regarding the alleged misconduct of police officers. Without commenting on the propriety of allowing the actions of the sort complained of, we simply endeavor to point out that the court should strive to maintain an atmosphere of impartiality and fairness during the retrial of the case.
*523 REVERSED AND REMANDED WITH INSTRUCTIONS.
JONES, ALMON, SHORES, EMBRY, BEATTY and ADAMS, JJ., concur.
TORBERT, C.J., and MADDOX, J., dissent, with opinion by TORBERT, C.J.
TORBERT, Chief Justice (dissenting).
I respectfully dissent. The case of Freeman v. Hall, 286 Ala. 161, 238 So.2d 330 (1970), sets forth the standard against which the trial court tests allegedly improper responses to voir dire inquiries and the standard which this Court must apply in reviewing the trial court's rulings in those instances. In Freeman this Court held:
"We hold that the proper inquiry for the trial court on motion for new trial, grounded on allegedly improper responses or lack of responses by prospective jurors on voir dire, is whether this has resulted in probable prejudice to the movant.
"....
"This rule comports with logic and common sense. The trial judge heard the questions posed on voir dire and answers thereto. He is in the best position to make findings on the question of probable prejudice after the testimony is developed orally, or by affidavit, on new trial motion. His conclusions are then subject to our review for abuse of discretion.
"....
"Although the factors upon which the trial court's determination of prejudice is made must necessarily vary from case to case, some of the factors which other courts have considered pertinent are: temporal remoteness of the matter inquired about, the ambiguity of the question propounded, the prospective juror's inadvertence or willfulness in falsifying or failing to answer, the failure of the juror to recollect, and the materiality of the matter inquired about.
"We are mindful of the heavy responsibility placed on the trial court to maintain the statutory right which parties have to a full and truthful disclosure by jurors on voir dire. However, we must also be aware of inadvertent concealment and failure to recollect on the part of prospective jurors.
"To re-emphasize, we say that we will review the trial court's ruling on motion for new trial predicated on jurors' improper answers to (or failure to answer) questions propounded on voir dire only for abuse of discretion in its determination as to probable prejudice."
286 Ala. at 166-67, 238 So.2d at 335-36.
More recently, this Court has reaffirmed the tenets expressed in Freeman in its decisions in Curry v. Lee, 460 So.2d 1280 (Ala.1984); Estes Health Care Centers, Inc. v. Bannerman, 411 So.2d 109 (Ala. 1982); Cavalier Ins. Corp. v. Faulk, 368 So.2d 6 (Ala.1979); and Martin v. Mansell, 357 So.2d 964 (Ala.1978).
At the hearing on the motion for new trial, Richburg testified as follows:
"Q. Were you one of the jurors in the case of Tammy Wallace versus the City of Andalusia?
"A. Yes, sir.
"Q. Were you in the courtroom when the Judge questioned ya'll about the relationship to anybody connected with a police officer?
"A. Yes, sir.
"Q. What is your name before you were married?
"A. Okay. I've been married twice, but my maiden name is Cynthia Gail Harrell.
"....
"Q. You are a Harrell?
"A. My maiden name.
"Q. Your maiden name is Harrell? Are you related to the Sheriff, Don Harrell?
"A. Uhmywe are supposedly third cousins, it's hard to explain it, but I don't know how. I ask my dad and that's how I know it. It's his daddy and Don's granddaddy, I think, is brothers.
"Q. Brothers? All right.
"A. Or something.

*524 "Q. When these questions were asked that day, did you answer as to having any relationship with sheriff Harrell?
"A. No, because I didn'tthird cousins....
"Q. You didn't think that was sufficient?
"A. No.
"....
"Q. Mrs. Richburg, were you aware of what degree of relationship that you had with Don Harrell at the time on Monday when ya'll were qualified?
"A. No, sir.
"Q. In your judgment, did the fact that you may have been related to Don Harrell in some way influence your deliberations on the case or the outcome of the case at all?
"A. No, because I had my own opinion just like everyone else."
Inadvertent concealment and failure to recollect on the part of a prospective juror are pertinent factors which may be considered in a court's determination of whether the juror's lack of response to a question on voir dire resulted in probable prejudice. It seems clear, from Richburg's testimony, that inadvertence or lack of recollection was the cause of her failure to respond to plaintiff's question. I cannot conclude that the trial judge, who was present during voir dire examination and the hearing on the motion for new trial and had a chance to hear the questions and observe the attorneys and the juror, abused his discretion in denying plaintiff's motion for new trial.
MADDOX, J., concurs.